UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JONATHAN T. BALDWIN,

           Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

Case No. 1:23-cv-01719-JLT-EPG

FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY BE REVERSED AND THIS CASE BE REMANDED FOR FURTHER PROCEEDINGS

(ECF Nos. 1, 9).

FOURTEEN (14) DAY DEADLINE

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for supplemental security income benefits. *See* 28 U.S.C. § 636(b)(1)(B) (providing for issuance of proposed findings of fact and recommendations); Local Rule 302(c)(17) (referring final social security decisions for findings and recommendations).

Plaintiff argues as follows:

    A.  The ALJ opinion failed to properly analyze Plaintiff's subjective symptom testimony.

    B.  The ALJ opinion improperly used activities of daily living to attack Claimant's credibility in the subjective symptom analysis.

1

C.   The errors were outcome determinative and the case should be remanded back to

Social Security.

(ECF No. 9, p. 2) (alterations to capitalization and punctuation).

Having reviewed the record, administrative transcript, parties' briefs, and the applicable law, the Court finds as follows.

# I.   ANALYSIS

## A.   Summary of the Parties' Arguments

Plaintiff challenges the ALJ's discounting of his subjective complaints. He argues that "the ALJ simply summarized the medical evidence at issue in the case and ma[d]e a generalized statement that that record undermines the claimant's testimony" without providing "any reasoning why [the ALJ] thought any of the medical evidence supported or cut against the credibility of any subjective symptom testimony." (ECF No. 9-1, p. 5). Similarly, he argues that the ALJ "attempts to use activities of daily living to controvert Plaintiff's subjective symptom testimony, but never even attempts to meet the Ninth Circuit requirements to do so." (*Id.* at 6).

Defendant counters that the ALJ provided "numerous and specific reasons for discounting Plaintiff's subjective complaints" and "adequately and reasonably explained how Plaintiff's wide range of activities undermined his subjective complaints." (ECF No. 11, pp. 7, 9).

## B.   Standards

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

However, "[t]he standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). An ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995); *see Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Accordingly, our next task is to determine whether the ALJ's adverse credibility finding of Carmickle's testimony is supported by substantial evidence under the clear-and-convincing standard.").

### C.    ALJ's Opinion

The ALJ summarized Plaintiff's subjective complaints as follows:

> The claimant alleges that schizoaffective disorder, scoliosis, flat feet, rapid heartbeat, and anxiety issues prevent him from working (Exhibit 1E). Scoliosis causes pain in his back. This condition was diagnosed around 2013. He was prescribed a brace that he wore for about one year. He stopped growing so the spine stopped twisting. Nonetheless, he reports daily mid to low back pain. The pain is aggravated by standing and sitting; but he has not seen an orthopedist for three to four years.

> The claimant testified that he is under psychiatric care through UCLA. He had seen several doctors as they transition out. The claimant receives psychiatric medication. The claimant attends mental health therapy and reports that his therapist is on sabbatical, so he is looking for a new therapist. He was seen every two weeks to every month with one-on-one sessions since 2012. The claimant denied any psychiatric hospitalizations or involuntary psychiatric hold since 2020. The claimant reported that prior to age 18, he was hospitalized due schizoaffective disorder. However, there have been no admissions since age 18.

> The claimant denied being responsible for any household chores, but he admitted that he occasionally cleans the bathroom and keeps his room clean. He cannot mow the lawn because of the pain in his back and feet. On the weekends the claimant spends time at his mother's house. He visits with his brother, sister-in-law and his niece and nephew.

> The claimant's documented subjective complaints include foot pain from flat feet he cannot stand more than two to three minutes before needing to sit down for 30 minutes; his feet hurt for 95% of the day. He reported always needing a back brace since 2012. He reported that every once in a while he hears his name being called or someone telling him a random thing, but turning and seeing no one there; at times seeing figures, such as a little girl that "turned back into a fire hydrant;" feelings of impending doom three to four times a day; thinking that others can

read his thoughts; difficulty focusing; some irritability associated with siblings arguing; and medication side effects including substantial weight gain, sleep disturbance, drowsiness and difficulty waking, insomnia, dreams, feeling anxious, restlessness, fast heartbeat, dizziness, sweating a lot around others, and sensitivity to heat. At the prior hearing, the claimant testified he continues to have these symptoms despite taking medication. He also reported that he had been hospitalized multiple times for hearing voices telling him to kill himself (Claimant Testimony; Exhibits 3E; 6F).

(A.R. 28-29).[1]

Thereafter, the ALJ summarized the medical record. The ALJ noted that the record mentioned issues including obesity, mild scoliosis, and foot issues, including "severe flatfoot deformity bilaterally, with complete collapse of the bilateral foot on the frontal plane with hide foot valgus." (A.R. 29). As far as treatment, "claimant's podiatrist John Etcheverry, DPM, recommended conservative treatment with custom invert orthotics." (A.R. 30). And generally, "the objective findings on clinical examination were mostly within normal limits," including "no tenderness," "no evidence of abnormal movements," "full muscle strength with no motor weakness," "no pain to palpation to the midfoot," and "normal gait and station." (A.R. 30).

As far a mental health issues, the record at times described Plaintiff "as anxious, depressed, and with fearful mood; . . . concrete thought processes at times involving delusional content regarding broadcasting or suicidal preoccupation; . . . ; slightly distracted concentration; auditory and visual hallucinations; [and] impaired judgment" along with "a history of hospitalization for suicidal ideation and diagnoses of schizoaffective disorder, depressed type, anxiety, and intermittent insomnia." (A.R. 30). "Psychiatrically, objective observations on mental status evaluation were also generally within normal limits," including "good eye contact," "well-groomed appearance," "good mood," "normal memory," and "no suicidal or homicidal ideation." Further, "there [was] little objective evidence of hospitalizations since the application filing date." (A.R. 30).

Further, the ALJ pointed to certain activities of daily living that were supposedly inconsistent with Plaintiff's complaints. (A.R. 31). The ALJ noted that Plaintiff could maintain

---

[1] For readability and brevity, the Court has included only the most relevant excerpts from the ALJ's opinion without indicating omissions of text.

4

independent personal care with no problems and perform some chores, like cleaning his room, sweeping, and washing dishes. (A.R. 31). He could also count change and manage a savings account. (A.R. 31). And Plaintiff interacted with others, maintaining at least one friendship, interacting with his family on a regular basis and maintain strong, and attending medical appointments and monthly therapy appointments. (A.R. 31).

### D.     Discussion

As to Plaintiff's subjective complaints, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 29). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony. The ALJ discounted the severity of Plaintiff's subjective complaints for two main reasons: (1) Plaintiff's ability to engage in certain activities of daily living and (2) the lack of supporting objective medical evidence for Plaintiff's complaints. The Court considers each of these bases in turn.

#### 1.  Daily activities

The ALJ discounted Plaintiff's subjective complaints based on his ability to engage in various daily activities of living, stating as follows:

> Despite the claimant's allegations of disability, he was able to perform independent basic activities of daily living, including maintaining independent personal care with no problems, preparing simple meals daily, and carrying out some household chores such as cleaning his room, and toilet. He denied being able to mow the lawn despite his prior acknowledgement of doing so. He reported that he can sweep, vacuum, wash dishes, and fold clothes. He was learning to play golf, he goes shopping with his father twice monthly for 45 minutes and gets outside one to three times per day. The claimant can count change and handle a savings account (Exhibit 3E). The claimant was able to live with family (including his parents, one brother, and two sisters, or later, his father and grandfather), interact with his family on a regular basis and maintain strong family support and positive relationships, socialize through activities and peers, maintain at least one friendship, get along "very well" with authority figures, attend medical appointments and monthly therapy appointments. The claimant was able to interact with others at Pathpoint during an employment evaluation, he spends time with others on the phone and over online video games, attends church and participate in church groups, and he generally responded appropriately during two hearings,

consistent with at most moderate difficulties interacting with others. In addition to the above wide range of activities of daily living, the claimant was notably able to maintain sufficient focus to count change and handle a savings account. Moreover, during the prior hearing the claimant admitted he was able to pick up dog toys and push furniture around, including medium-size chairs, and the record notes he was able to exercise twice a week by going to the gym and attending water aerobics classes with his brother (Exhibits 3E-4E; 6F; 8-9F; 14F; Claimant Testimony). . . . Overall, the claimant's relatively intact daily activities are consistent with the above moderate paragraph B findings and modified medium residual capacity.

(A.R. 31).

A claimant's ability to engage in daily activities of living may be used to discount his subjective complaints where (1) his activities "contradict his other testimony" or (2) they "meet the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Moreover, the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

Plaintiff argues that the ALJ "nowhere argues that any activity of daily living directly contradicts any specific testimony" and "nowhere argues, finds, or even discusses whether that that the activities meet the threshold for transferable work skills." (ECF No. 9-1, pp. 6-7). Defendant contends that "[t]he ALJ adequately and reasonably explained how Plaintiff's wide range of activities undermined his subjective complaints." (ECF No. 11, p. 9). Upon review of the parties' arguments and the ALJ's decision, the Court concludes that Plaintiff has the better argument.

For the most part, the ALJ failed to explain how Plaintiff's daily activities were inconsistent with his testimony. *See Smith v. O'Malley*, No. 1:21-CV-0312 JLT BAM, 2024 WL 1253852, at *5 (E.D. Cal. Mar. 25, 2024) (rejecting ALJ's reliance on daily activities to discount subjective complaints where "the AJ did not make any determination that these activities conflict with Plaintiff's other statements concerning her level of activity"). For example, it is unclear how Plaintiff's ability to prepare simple meals was inconsistent with any of his complaints.

However, the Court notes that the ALJ pointed out that Plaintiff "denied being able to

mow the lawn despite his prior acknowledgement of doing so," thus implying that Plaintiff's testimony could not be fully believed. While the ALJ did not cite any specific part of the record to support this point, the Court notes that at Plaintiff's hearing in the case on December 5, 2022, Plaintiff stated, "I can't mow the lawn because it hurts my feet and back too much." (A.R. 60). And at a September 12, 2020 mental health appointment, Plaintiff reported that he had been doing more chores at his grandfather's house, which included "mowing the front lawn." (A.R. 774). While the ALJ's observation is accurate insofar as Plaintiff denied mowing the lawn at the hearing despite earlier saying that he did mow the lawn, this alone is not a clear and convincing reason to conclude that Plaintiff was not credible. Notably, the ALJ did not explore this issue to determine if circumstances changed over two years later in December 2022. Any inconsistency on this issue is not so clear or material to entirely discount Plaintiff's testimony.

Moreover, the ALJ never explained how Plaintiff's daily activities—which mostly consisted of household chores—transferred to the work setting. For example, the ALJ never explained how Plaintiff's ability to sweep, vacuum, wash dishes, and fold clothes meant that he is not otherwise disabled. *See Smith*, 2024 WL 1253852, at *5 (noting that the Ninth Circuit has concluded that daily household chores are not easily transferable to a work setting). Likewise, "the record does not indicate that Plaintiff could—or did—perform any of the activities identified for a substantial part of each day." *Id.*

In conclusion, Plaintiff's ability to perform some daily activities does not provide a clear and convincing reason to discount his subjective complaints.

### 2.  Lack of supporting objective evidence

Throughout the summary of the medical record, the ALJ indicated that Plaintiff's subjective complaints were not fully supported by objective evidence. Among other things, the ALJ acknowledged Plaintiff's "significant congenital flatfoot deformity/skew foot deformity" and complaints of foot pain but noted that his "podiatrist John Etcheverry, DPM, recommended conservative treatment with custom invert orthotics" and that "the objective findings on clinical examination were mostly within normal limits." (A.R. 30). Additionally, the ALJ recognized Plaintiff's symptoms and prior hospitalizations resulting from mental health issues, but noted that

"there is little objective evidence of hospitalizations since the application filing date," that "treatment records generally reflect exacerbated symptoms, but within the context of life stressors such as a hospitalization for appendicitis in September 2019 and his parents' separation," and that "objective observations on mental status evaluation[s] were also generally within normal limits." (A.R. 30).

Moreover, after summarizing the medical record, the ALJ stated as follows:

> Despite the claimant's statements concerning the intensity, persistence the limiting effects of these symptoms are not fully supported by the objective medical evidence and other relevant documented evidence. For example, the documented objective medical evidence, including generally normal clinical findings, and the claimant's relatively intact daily activities are inconsistent with functional limitations to the degree alleged. Notwithstanding, his allegations of difficulty focusing, even when he is on medication; the treating records generally reflect effective treatment, with good mood, better sleep, stable appetite, and stable concentration, when he complied with prescribed medication; and the undersigned observed that the claimant was able to focus sufficiently to answer most questions at both hearings. He also denied psychosis and sustained episodes of low mood when compliant with medications, and he admitted that when he felt people could read his thoughts, he did not find it distressing.

(A.R. 31).

While a lack of supporting evidence cannot be the sole basis to discount testimony, it can be a factor. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Plaintiff argues that the ALJ simply summarized the medical record without explaining what evidence undermined his subjective complaints. (ECF No. 9-1, p. 5). Defendant argues that the ALJ's reliance on normal examination findings, conservative treatment, and reports of doing well was sufficient to reject Plaintiff's subjective complaints. (ECF No. 11, pp. 4-7). Upon review of the parties' arguments and the ALJ's decision, the Court concludes that Plaintiff has the better argument.

Most of the ALJ's summary of the record fails to identify the specific testimony that is

purportedly undermined by the medical evidence. *See Leal v. O'Malley*, No. 1:22-CV-0759 JLT GSA, 2024 WL 1304921, at \*7 (E.D. Cal. Mar. 27, 2024) ("Unless the ALJ links the claimant's testimony to the observations an ALJ makes as part of the summary of the medical record, the summary is not sufficient to reject a claimant's subjective statements.") (quotation marks and citation omitted). For example, while the ALJ notes that "there is little objective evidence of hospitalizations since the application filing date" the ALJ does not explain why this is material in terms of discounting any of Plaintiff's subjective complaints.

However, the Court recognizes that the ALJ's opinion indicates that Plaintiff's lack of more substantial treatment, normal findings on examination, and reports of doing well were also inconsistent (not just unsupported) with his subjective complaints.

Among other things, the ALJ appeared to discount Plaintiff's foot-related testimony because his doctor "recommended conservative treatment with custom invert orthotics." (A.R. 30). However, the ALJ omits the full context from this record:

> The patient has a very complicated flatfoot deformity. Not only does he have a significant and very severe flatfoot deformity pale who also has a skew foot deformity component to this. The skew foot deformity is what makes this so complicated. The skew foot deformity is what I call the confused foot. The front of the foot is high arched for the back of the foot has severe flatfoot. *This is a very difficult foot to surgically correct. At this time I would highly recommend custom inverted orthotics to attempt to decrease his pain and increase his function. If the orthotics fail he would have to consider significant reconstructive foot surgery.*

(A.R. 827) (emphasis added). In short, the custom orthotics (the "conservative treatment") appear to have been recommended only because Plaintiff had "a very difficult foot to surgically correct." Moreover, the doctor still noted that "significant reconstructive foot surgery" would be the remaining option if Plaintiff's orthotics failed.

Likewise, while the ALJ correctly pointed out that Plaintiff had normal clinical findings and reported doing well, the record likewise reveals that Plaintiff otherwise had abnormal findings and he reported symptoms. For example, the record reveals that Plaintiff had difficulty concentrating (*see, e.g.*, A.R. 611, 621, 712, 759), and that he had suicidal ideation, was anxious, or depressed and did not feel well (*see, e.g.*, 607, 617, 618, 731, 734, 742, 752, 900, 909). This

record of "ups and downs" (A.R. 909) made it all the more important for the ALJ to identify the evidence that specifically undermined Plaintiff's complaints. *See Smith*, 2024 WL 1253852, at *3 ("However, if an ALJ cites the medical evidence, it is not sufficient for the ALJ to simply state that the testimony is contradicted by the record. Rather, an ALJ must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.") (quotation marks and citation omitted).

Because the ALJ failed to sufficiently undermine Plaintiff's subjective complaints by referencing the normal findings in the record, there are not clear and convincing reasons to reject Plaintiff's subjective complaints.

As for remedy, Plaintiff asks that this case be remanded for further proceedings and does not request an award of benefits. (ECF No. 9-1, p. 7). The Court believes that this is the proper remedy to the ALJ's failure to adequately address Plaintiff's subjective complaints. *See Smith*, 2024 WL 1253852, at *6 (concluding that "[a] remand for further proceedings regarding the subjective statements of a claimant [was] an appropriate remedy").

## III.    CONCLUSION AND RECOMMENDATIONS

Accordingly, based on the foregoing, IT IS RECOMMENDED that:

1. The decision of the Commissioner of the Social Security Administration be reversed;

2. The matter be remanded for further proceedings so that the ALJ may sufficiently address Plaintiff's subjective complaints; and

3. The Clerk of Court be directed to enter judgment in favor of Plaintiff and to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

\\\

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 17, 2024**                    /s/ *Erica P. Grosjean*
                                      UNITED STATES MAGISTRATE JUDGE