# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN T. BALDWIN,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No.: 1:23-cv-1719 JLT EPG<br><br>ORDER DECLINING THE FINDINGS AND RECOMMENDATIONS, DENYING PLAINTIFF'S APPEAL, AND GRANTING THE COMMISSIONER'S REQUEST TO AFFIRM THE ADMINISTRATIVE DECISION<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF THE COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF JONATHAN BALDWIN<br><br>(Docs. 9, 11, and 19) |

Jonathan Baldwin seeks review of the final decision denying his application for supplemental security income under Title XVI of the Social Security Act. (Docs. 1, 9.) Plaintiff asserts the administrative law judge failed to properly evaluate Plaintiff's subjective statements concerning his impairments, particularly by relying upon the medical evidence and Plaintiff's activities of daily living. (Doc. 9-1 at 3-7.) The Commissioner asserts the ALJ's decision is supported by substantial evidence. (Doc. 11.) For the reasons set forth below, Plaintiff's appeal from the administrative decision is denied and the administrative decision is affirmed.

## I.   Decision of the ALJ

The ALJ evaluated Plaintiff's application using the five-step sequential evaluation set forth in 20 C.F.R. § 416.920(g). (Doc. 8-1 at 32-41.) First the ALJ determined Plaintiff did not engage in

1

substantial gainful activity after the application date of April 15, 2020.  (*Id.* at 32.)  Second, the ALJ found Plaintiff's severe impairments included: "schizoaffective disorder, bilateral flatfoot and skew foot deformity."  (*Id.*)  At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing.  (*Id.* at 33.)  Next, the ALJ found:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except he can occasionally climb, stoop, kneel, crouch, and crawl; is limited to simple, routine tasks, occasional interaction with supervisors, coworkers, and the public; and can maintain attention and concentration for two-hour increments with normal breaks.

(*Id.* at 33.)  In so finding, the ALJ indicated that she considered "the entire record," which included medical evidence, Plaintiff's statements, and third-party statements.  (*Id.*; *see also id.* at 33-39.)  At step four, the ALJ noted Plaintiff did not have any past relevant work.  (*Id.* at 39.)  However, the ALJ found "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  (*Id.* at 40.)  Thus, the ALJ concluded at step five that Plaintiff was not disabled as defined by the Social Security Act.  (*Id*. at 41.)

## II.     Issues Raised by Plaintiff

First, Plaintiff asserts the ALJ "failed to properly analyze [his] subjective symptom testimony."  (Doc. 9-1 at 3 [emphasis omitted].)  Plaintiff contends "the ALJ simply summarized the medical evidence at issue in the case and make (sic) a generalized statement that that record undermines the claimant's testimony."  (*Id.* at 5, citing AR 29-31 [Doc. 8-1 at 35-37].)  According to Plaintiff, "the ALJ did not in any way give any reasoning why he thought any of the medical evidence supported or cut against the credibility of any subjective symptom testimony."  (*Id.*)  Rather, Plaintiff asserts the ALJ "used almost the exact same conclusory boilerplate as … the Ninth Circuit found insufficient" in *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 20200).  He also contends the ALJ did not "explain why the evidence is contradictory," such as how the evidence "undermine[d] Plaintiff's testimony that he has pain affecting his work abilities, e.g., standing, speaking, or walking," as required under *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).  (*Id.* at 5-6.)

Second, Plaintiff argues the ALJ "improperly used activities of daily living to attack [his] credibility in the subjective symptom analysis."  (Doc. 9-1 at 6 [emphasis omitted].)  He contends, that

the ALJ did not find "any activity of daily living directly contradicts any specific testimony." (*Id.*) Plaintiff also contends, "The ALJ … nowhere argues, finds, or even discusses whether that that the activities meet the threshold for transferable work skills." (*Id.* at 6-7.)  As a result, Plaintiff contends the ALJ "failed to follow clear Ninth Circuit requirements to even attempt to use activities of daily living." (*Id.* at 7.)  Plaintiff contends these errors of the ALJ "were outcome determinative and the case should be remanded." (*Id.* [emphasis omitted].)

### III.    Findings and Recommendations

The magistrate judge indicated: "The ALJ discounted the severity of Plaintiff's subjective complaints for two main reasons: (1) Plaintiff's ability to engage in certain activities of daily living and (2) the lack of supporting objective medical evidence for Plaintiff's complaints." (Doc. 19 at 5.)  The magistrate judge considered the identified reasons and found the ALJ failed to identify "clear and convincing reasons to reject Plaintiff's subjective complaints." (*Id.* at 10.)

The magistrate judge observed that Plaintiff asserted the ALJ did not properly consider his activities of daily living, because the ALJ did not make findings of direct contradictions or determine his activities resulted in transferable work skills.  (Doc. 19 at 6, citing Doc. 9-1 at 6-7.)  The Commissioner argued that "[t]he ALJ adequately and reasonably explained how Plaintiff's wide range of activities undermined his subjective complaints." (*Id.*, quoting Doc. 11 at 9.)  Upon review of the ALJ's decision, the magistrate judge found "Plaintiff has the better argument." (*Id.*)  The magistrate judge observed: "For the most part, the ALJ failed to explain how Plaintiff's daily activities were inconsistent with his testimony." (*Id.*)  In addition, the magistrate judge noted "the ALJ never explained how Plaintiff's daily activities—which mostly consisted of household chores—transferred to the work setting." (*Id.* at 7.)  Therefore, the magistrate judge concluded that "Plaintiff's ability to perform some daily activities does not provide a clear and convincing reason to discount his subjective complaints.  (*Id.*)

The magistrate judge noted that lack of supporting evidence can be a factor considered by the ALJ, but it may not be the sole reason to discount testimony.  (Doc. 19 at 8.)  The magistrate judge found: "Most of the ALJ's summary of the record fails to identify the specific testimony that is purportedly undermined by the medical evidence." (*Id.* at 8-9.)  For example, the magistrate judge

3

noted: "while the ALJ notes that 'there is little objective evidence of hospitalizations since the application filing date' the ALJ does not explain why this is material in terms of discounting any of Plaintiff's subjective complaints." (*Id.* at 9.) Thus, the magistrate judge again found that "Plaintiff [had] the better argument" regarding the ALJ's analysis of the objective medical record. (*Id.* at 8.)

The magistrate judge acknowledged, "the ALJ's opinion indicates that Plaintiff's lack of more substantial treatment, normal findings on examination, and reports of doing well were also inconsistent (not just unsupported) with his subjective complaints." (Doc. 19 at 9.) However, the magistrate judge found the ALJ did not properly consider the treatment Plaintiff received for his flatfoot impairment, as "the custom orthotics (the "conservative treatment") appear to have been recommended only because Plaintiff had "a very difficult foot to surgically correct." (*Id.*) Furthermore, the magistrate judge determined: "while the ALJ correctly pointed out that Plaintiff had normal clinical findings and reported doing well, the record likewise reveals that Plaintiff otherwise had abnormal findings and he reported symptoms." (*Id.*) Therefore, the magistrate judge concluded "the ALJ failed to sufficiently undermine Plaintiff's subjective complaints." (*Id.*)

The magistrate judge recommended "the decision of the Commissioner of the Social Security Administration be reversed" and the action "be remanded for further proceedings so that the ALJ may sufficiently address Plaintiff's subjective complaints." (Doc. 19 at 10.)

**IV.    Objections and Response**

The Commissioner filed objections to the Findings and Recommendations, asserting the magistrate judge erred in reviewing the ALJ's analysis. (*See generally* Doc. 20 at 1-4.) The Commissioner asserts that, as the magistrate judge acknowledged, "the ALJ found that Plaintiff's denial of mowing the lawn due to foot pain was directly inconsistent of his prior acknowledgement that he did mow the lawn." (Doc. 20 at 2.) According to the Commissioner, the magistrate judge "then concluded that the ALJ should have gone further to explore any potential reasons for Plaintiff's inconsistent statements, such as a change in circumstances, but did not identify any legal authority or record evidence for why the ALJ needed to seek such an explanation." (*Id.*) In addition, the Commissioner asserts the magistrate judge "overlooked the ALJ's additional reasoning that despite Plaintiff's allegations of disabling foot pain, he was able to go to the gym twice a week and play golf."

4

(*Id.* citing AR 31, 569, 589, 901, 924 [Doc. 8-1 at 37, 575, 595, 907, 930].)  The Commissioner contends that "[a] claimant's activities, such as exercise, can undermine his subjective complaints even if they do not prove his ability to return to work." (*Id.*, citing *Valentine v. Comm'r*, 574 F.3d 685, 693 (9th Cir. 2009).)

The Commissioner asserts the magistrate judge also erred in addressing the treatment Plaintiff received, including the custom introvert orthotics.  (Doc. 20 at 3.)  The Commissioner observed, "the magistrate judge found that the full context of the treatment record indicated that Plaintiff's doctor stated surgical correction would be very difficult but, if the custom orthotics failed, 'he would have to consider significant reconstructive foot surgery.'" (*Id.*, quoting Doc. 19 at 9, AR 827 [Doc. 8-1 at 833].)  The Commissioner notes that neither Plaintiff nor the magistrate judge "cited evidence that Plaintiff ever pursued such surgery, that his doctor further recommended it, or that Plaintiff's foot orthotics proved unsuccessful." (*Id.*)  The Commissioner contends the magistrate judge "overlooked the ALJ's additional reasoning that Plaintiff managed his pain with over-the-counter medication (Aleve) ([AR] 28, 55), which is a valid reason for discounting a Plaintiff's physical complaints." (*Id.*, citing *Parra v. Astrue*, 418 F.3d 742, 751 (9th Cir. 2007).)

Finally, the Commissioner asserts the "findings regarding the objective evidence conflicted with the Court's standard of review." (Doc. 20 at 3-4.)  The Commissioner observes, "Even when objective evidence shows some variability, the Court should uphold an ALJ's conclusions when the objective evidence is susceptible to more than one rational interpretation." (*Id.* at 4, citing *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020).)  According to the Commissioner, "the ALJ noted the mixed objective evidence, such as a finding of 'slightly distracted' concentration ([AR] 30, 621), which the ALJ reasonably considered alongside other findings of linear thought process, alert mental status, and good judgment." (*Id.*)  The Commissioner maintains, "The ALJ identified substantial evidence to support her finding that the overall objective evidence contradicted Plaintiff's subjective complaints." (*Id.*)

Plaintiff filed a response to the objections, asserting the Commissioner's "argument essentially boils down to an argument that the record supports the ALJ Decision due to substantial evidence. (Doc. 21 at 2.)  However, Plaintiff contends the Commissioner ignores the issue in this action. (*Id.*)  Plaintiff contends: "[T]he entire Report and Recommendation is that the ALJ Decision failed to meet

5

the standard of *Brown-Hunter* and its related precedent. Yet the Defendant does not provide discussion a single discussion in the objection as to how the Report and Recommendation errored in its application of the *Brown-Hunter* precedent case law." (*Id.*)  Therefore, Plaintiff contends the Court should adopt the recommendation of the magistrate judge and remand the matter for additional proceedings. (*Id.*)

**V.     Discussion**

A district judge may "accept, reject or modify, in whole or in part, the findings and recommendations..." 28 U.S.C. § 636(b)(1).  If a party files objections, "the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendations to which objection is made." *Id.*  A de novo review requires the Court to "consider[] the matter anew, as if no decision had been rendered." *Dawson v. Marshall*, 561 F.3d 930, 932 (9th Cir. 2009).

   **A.     Evaluating subjective statements**

To evaluate a claimant's statements regarding the severity of his symptoms, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if there is no evidence of malingering, the ALJ must set forth clear and convincing reasons for rejecting subjective complaints. *Id.* at 1036.  An ALJ may consider many factors to assess a claimant's statements, including, for example: (1) the objective medical evidence, (2) the claimant's reputation for truthfulness, (3) inconsistencies in testimony or between testimony and conduct, (4) the claimant's daily activities, (5) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment, and (6) testimony from physicians about the nature, severity, and effect of the symptoms of reported by a claimant. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

   **B.     Use of boilerplate language**

As an initial matter, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Doc. 8-1 at 35.)

Plaintiff asserts the proffered language does not satisfy the "clear and convincing" standard, and the Ninth Circuit criticized such language. (*Id.*, citing *Lambert*, 980 F.3d at 1277.) As Plaintiff argues, the Ninth Circuit criticized the use of similar language as a "'boilerplate statement' by way of 'introductory remark,' which is 'routinely included' in ALJ decisions denying benefits." *Lambert*, 890 F.3d at 1277 (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) [modifications adopted]). When an ALJ employs boilerplate language, as here, such language "does not ... add anything to the ALJ's determination." *See Laborin v. Berryhill*, 867 F.3d 1151, 1154 (9th Cir. 2017). Thus, where an ALJ includes *only* boilerplate language, the analysis is insufficient to support the ALJ's conclusions, because "the 'clear and convincing' standard requires an ALJ to show his work." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022); *see also Laborin*, 867 F.3d at 1155.

As discussed below, the ALJ did not include only the language identified as boilerplate by the Ninth Circuit but proceeded to address several factors discussed below. Consequently, the Court finds the ALJ did not commit fatal error by reciting boilerplate language in the credibility determination. *See Smartt*, 53 F.4th at 499; *see also Elliott v. Astrue*, 2012 WL 3818288, at *5 (D. Or. Sept. 4, 2012) ("even if the use of this boilerplate language were error, in the context of the ALJ's more specific discussion that followed, it is harmless").

### C. Plaintiff's activities

A claimant's level of activity may be sufficient to support an ALJ's determination to give less weight to his subjective statements. *See, e.g., Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008). For example, the Ninth Circuit determined the ability to cook, clean, do laundry and manage finances may be sufficient to support an adverse finding of credibility. *See Stubbs-Danielson*, 539 F.3d at 1175. An ALJ may also conclude "the severity of … limitations were exaggerated" when a claimant exercises, gardens, and participates in community activities. *Valentine*, 574 F.3d at 693. Similarly, a claimant's ability to care for personal needs, "prepare easy meals, do light housework, and shop for some groceries," may be viewed as "inconsistent with the presence of a condition which would preclude all work activity." *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990). The Ninth Circuit explained, "Even where ... activities suggest some difficulty functioning, they may be grounds for discrediting the

claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Stubbs-Danielson*, 539 F.3d at 1175; *see also Valentine*, 574 F.3d at 693 (finding the ALJ identified "a clear and convincing reason to reject [the claimant's] subjective testimony" where the level of activity "contradicted [his] contentions about how debilitating his fatigue was").

Here, the ALJ observed that Plaintiff "able to perform independent basic activities of daily living, including maintaining independent personal care with no problems, preparing simple meals daily, and carrying out some household chores such as cleaning his room, and toilet." (Doc. 8-1 at 37.) The ALJ noted that Plaintiff "reported that he can sweep, vacuum, wash dishes, and fold clothes." (*Id.*) Further, the ALJ noted that Plaintiff "admitted he was able to pick up dog toys and push furniture around, including medium-size chairs, and the record notes he was able to exercise twice a week by going to the gym and attending water aerobics classes with his brother." (*Id.*) The ALJ found these were "relatively intact daily activities," and were consistent with the ability to perform medium-exertion work. (*Id.*) Notably, the identified activities are like those found sufficient in *Stubbs-Danielson* and *Valentine* to support the ALJ's rejections of the claimants' subjective statements. *See id.*, 539 F.3d at 1175; *Valentine*, 574 F.3d at 693.

As the Ninth Circuit explained, "Although the evidence of [the plaintiff's] daily activities may also admit of an interpretation more favorable to [him], the ALJ's interpretation was rational, and [the court] 'must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.'" *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). Thus, the activities identified by the ALJ support the decision to give less weight to Plaintiff's testimony concerning the severity of his symptoms.

### D.     Objective medical evidence

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can be "specific and substantial reasons that undermine … credibility." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The Ninth Circuit explained, "[w]hile subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v.*

*Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch*, 400 F.3d at 681 ("although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis"). Because the ALJ did not base the decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff, the objective medical evidence was a relevant factor in evaluating his subjective complaints.

If an ALJ cites the medical evidence, it is not sufficient for the ALJ to simply state that the record contradicts the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination"). An ALJ must identify "specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (ALJ must identify "what evidence suggests the complaints are not credible"). Unless the ALJ links the claimant's testimony to "the observations an ALJ makes as part of the summary of the medical record," the summary is not sufficient to reject a claimant's subjective statements. *Argueta v. Colvin*, 2016 WL 4138577, at *13 (E.D. Cal. Aug. 3, 2016) (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015)). In addition, district court may not review an ALJ's summary of the record to itself establish a link between a claimant's testimony and the record. In *Brown-Hunter*, the claimant argued the ALJ failed to provide clear and convincing reasons for rejecting her symptom testimony. *Id.*, 806 F.3d at 491. The district court identified inconsistencies in the ALJ's summary of the medical record that it opined gave rise to reasonable inferences about the plaintiff's credibility. *Id.* On appeal, the Ninth Circuit determined the ALJ failed to identify the specific testimony she found lacked credibility and did not link that testimony to support the adverse credibility determination. *Id.* at 493. The Court explained that even if the district court's analysis was sound, the analysis could not cure the ALJ's failure. *Id.* at 494.

The Ninth Circuit also determined an ALJ erred when discrediting symptom testimony as "not entirely consistent with the medical evidence," without linking testimony and medical evidence in *Holcomb v. Saul*, 832 Fed. App'x. 505 (9th Cir. Dec. 28, 2020). In *Holcomb*, the ALJ summarized the claimant's testimony and "determined that his symptom testimony was not 'entirely consistent with the medical evidence and other evidence in the record.'" *Id.* at 506. The Court found that "the ALJ

discussed relevant medical evidence but failed to link Holcomb's symptom testimony to specific medical records and explain why those medical records contradicted his symptom testimony." *Id.* Because the Court is constrained to the reviewing reasons identified by the ALJ for discounting testimony, the "failure to specific the reasons for discrediting Holcomb's symptom testimony was reversible error." *Id.* (citing *Brown-Hunter*, 806 F.3d at 494).

The ALJ sufficiently carried the burden to link Plaintiff's subjective statements to the record. For example, the ALJ stated Plaintiff made "allegations of difficulty focusing, even when he is on medication, [but] the treating records generally reflect effective treatment, with good mood, better sleep, stable appetite, and stable concentration, when he complied with prescribed medication." (Doc. 8-1 at 37.) Though this link between Plaintiff's statements and the record is minimal, it is sufficient to show the ALJ considered Plaintiff's testimony while discussing the medical record, and identified evidence that contradicted the testimony. *Compare with Holcomb*, 832 Fed. App'x at 506 (finding no link where "the ALJ never mentioned [the claimant's] symptom testimony while discussing the relevant medical evidence"). Consequently, Plaintiff's assertion of error on this ground is unavailing.

### E. Lack of hospitalization

The magistrate judge observed that the ALJ found "little objective evidence of hospitalizations since the application date." (Doc. 19 at 9.) The magistrate judge determined that "the ALJ does not explain why this is material in terms of discounting any of Plaintiff's subjective complaints," and suggested the lack of hospitalization was an improper consideration. (*Id.*) Significantly, however, the ALJ found: "there is little objective evidence of hospitalizations since the application filing date *which is consistent with the claimant's testimony*." (Doc. 8-1 at 36, emphasis added.) Thus, the ALJ did not consider the lack of hospitalizations as a factor to *discredit* Plaintiff, but rather acknowledged the consistency of this portion of his testimony with the record that showed "no hospitalizations since age 18." (*Id.* at 35-36.) Toward this end, the ALJ did not improperly address this factor.

### F. Unchallenged factors considered by the ALJ

In the opening brief, Plaintiff seems to suggest the ALJ considered only the objective medical evidence and activities in evaluating his subjective statements. However, review of the administrative decision reveals the ALJ considered several other factors in her analysis of Plaintiff's subjective

statements that Plaintiff neither acknowledged nor challenged in his appeal.

### 1. Treatment received

The treatment Plaintiff received, especially when conservative, is a legitimate consideration in a credibility finding. 20 C.F.R. §§ 404.1529(c), 416.929(c); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (the ALJ properly considered the physician's failure to prescribe, and the claimant's failure to request, medical treatment commensurate with the "supposedly excruciating pain" alleged). The Ninth Circuit "indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007).

The ALJ found that for Plaintiff's congenital flatfoot deformity/skew foot deformity, Plaintiff's podiatrist, Dr. John Etcheverry, "recommended conservative treatment with custom invert orthotics." (Doc. 8-1 at 36.) Specifically, Dr. Etcheverry indicated in January 2021:

> The patient has a very complicated flatfoot deformity. Not only does he have a significant and very severe flatfoot deformity pale who also has a skew foot deformity component to this. The skew foot deformity is what makes this so complicated. The skew foot deformity is what I call the confused foot. The front of the foot is high arched for the back of the foot has severe flatfoot. This is a very difficult foot to surgically correct. At this time I would highly recommend custom inverted orthotics to attempt to decrease his pain and increase his function. If the orthotics fail he would have to consider significant reconstructive foot surgery.

(Doc. 8-1 at 833.) Although the magistrate judge indicated the conservative care appeared to be recommended only due to the anticipated difficulty of surgery, the record does not show that the prescribed conservative care failed during the adjudicated period. Rather, the record supports the conclusion that Plaintiff received only conservative treatment, and the Court declines to speculate as to any potential, future need for more aggressive treatment. *See, e.g.*, *Loretta G. v. O'Malley*, 2024 WL 3074798, at *2 (N.D. Ill. June 11, 2024) (rejecting the plaintiff's argument that "the ALJ should not have characterized her treatment as routine and conservative" where her doctor indicate surgery was the probable next step, because "the ALJ was not required to speculate as to possible future treatment Plaintiff might receive"). Consequently, the conservative treatment supports the ALJ's decision to discount Plaintiff's testimony concerning the severity of his symptoms. *Parra*, 481 F.3d at 750.

///

### 2. Intent to work

The ALJ observed Plaintiff testified at his first hearing in 2021 that he was unable to find a job because of his disability but acknowledged "that he worked with Pathpoint to try and find employment." (Doc. 8-1 at 34.) In addition, the ALJ noted that in May 2022, Plaintiff "was working for Habitat for Humanity sorting donated clothing." (*Id.* at 36.) Significantly, the Ninth Circuit determined an ALJ may discount a claimant's credibility where he searched for work, as it "cast[s] doubt on a claim of disability" and indicates the claimant believes he is able to work. *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014); *see also Bray v. Comm'r of Soc. Sec. Admin*, 554 F.3d 1219, 1227 (9th Cir. 2009) (finding the ALJ properly considered that the clamant "sought out other employment" in discounting the claimant's testimony). The record supports the ALJ's finding that Plaintiff expressed an intent to work, which was properly considered in the analysis of Plaintiff's allegations regarding the severity of his symptoms.

### 3  ALJ's observations from the hearing

The ALJ observed Plaintiff "was able to focus sufficiently" at the administrative hearings, despite his "allegations of difficulty focusing." (Doc. 8-1 at 37.) Plaintiff does not address the observation, which is a proper factor for the ALJ to consider. *See Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986) (when an ALJ includes personal observations of a claimant during the hearing, the decision is not improper if other evidence supports the determination); *see also Drouin v. Sullivan*, 966 F.2d 1255, 1258-59 (9th Cir. 1992) (observations of ALJ during the hearing, along with other evidence, is substantial evidence for rejecting testimony). Because the ALJ set forth other clear and convincing reasons for finding Plaintiff's subjective complaints lacked credibility, the ALJ properly incorporated her personal observations into the decision to reject Plaintiff's statements. *See Nyman*, 779 F.2d at 531; *Drouin,* 966 F.2d at 1258-59.

### G.     Harmless error

Even if the Court agreed the analysis of the inconsistency between Plaintiff's testimony and the objective findings was not sufficiently specific, such an error is harmless because the ALJ provided several additional clear and convincing reasons for rejecting Plaintiff's subjective complaints. As the Ninth Circuit explained, "[a]n ALJ's error was harmless where the ALJ provided one or more invalid

reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *see also Glendenning v. Kijakazi*, No. 22-35391, 2023 WL 3479564, at *1 (9th Cir. May 16, 2023) ("even assuming the ALJs reasoning regarding the objective medical evidence was insufficiently specific, any error was harmless, because the ALJ relied on other valid reasons to discredit [the plaintiff's] testimony including ... the conservative nature of her treatment and her daily activities").

In light of the number of factors considered to assess Plaintiff's subjective complaints— including several unchallenged by Plaintiff in his appeal— the ALJ carried the burden to set forth findings "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

## VI.   Conclusion and Order

Pursuant to 28 U.S.C. § 636 (b)(1), this Court conducted a *de novo* review of the case. Having carefully reviewed the entire matter, the Court finds the ALJ applied proper legal standards and substantial evidence supports the administrative decision. Thus, the Court **ORDERS**:

1. The Court declines to adopt the Findings and Recommendations (Doc. 19).
2. Plaintiff's motion for summary judgment (Doc. 9) is **DENIED**.
3. Defendant's request to affirm the administrative decision (Doc. 11) is **GRANTED**.
4. The Clerk of Court is directed to terminate pending motions; enter judgment in favor of Defendant, the Commissioner of Social Security, and against Plaintiff Jonathan T. Baldwin; and to close this case.

IT IS SO ORDERED.

Dated:   **March 10, 2025**

UNITED STATES DISTRICT JUDGE

13